

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-2008

# Razzoli v. Dir Bur Prisons

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2181

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Razzoli v. Dir Bur Prisons" (2008). *2008 Decisions.* Paper 511.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/511

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-2181

KEVIN RAZZOLI,

Appellant

v.

DIRECTOR, BUREAU OF PRISONS; DIRECTOR OF N.E.R.O., BOP;
WARDEN, FCI ALLENWOOD; U.S. PAROLE COMMISSIONER; MR. WAGNER;
UNIT 3-A CASE MANAGER MR. DEWEY; UNIT 3-A COUNSELOR MR. BUCK

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 05-CR-557
District Judge: The Honorable Edwin M. Kosik

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 12, 2008

Before: MCKEE, SMITH,
and WEIS, *Circuit Judges*

(Filed: September 22, 2008 )

OPINION

SMITH, *Circuit Judge*.

Kevin Razzoli was imprisoned pursuant to a Naval Court Martial on December 1,

1987. He has since been released on parole (and re-parole) and has violated his parole

conditions several times. Following his latest violation of parole, Razzoli was offered, and accepted, an expedited revocation procedure with a re-parole date of September 28, 2004. One of the conditions of his re-parole was that Razzoli submit an acceptable release plan.

The actions that give rise to this appeal occurred during the period immediately preceding Razzoli's September re-parole date. According to the record, on August 10, 2004, Razzoli met with his case manager, Keith Dewey, to discuss his release. Dewey told Razzoli that until he provided a release address, there was little Dewey could do to facilitate the release and that he had asked the Parole Commission to retard the release date by 60 days to give Razzoli time to secure a public law release. Dewey indicated that Razzoli then became angry, pointed his finger at him, and screamed, "I am going to sue you. I am going to make sure your assets are frozen." Dewey subsequently filed an incident report charging Razzoli with: 1) threatening another with bodily harm, 2) interfering with staff in performance of duties, and 3) insolence towards a staff member.

As a result of his conduct, Razzoli was placed in the Special Housing Unit (SHU) and contends that this, and the incident report, which he alleged was false, were issued in retaliation for seeking relief through the courts. Razzoli was given a disciplinary hearing on September 1, 2004, and found guilty of the prohibited act of interfering with a staff member in performance of duties. He was sanctioned as a result. One of the sanctions he received was forfeiture of fifteen days of statutory good time credit. Razzoli, proceeding

pro se, then filed the instant *Bivens* action against the Director of Bureau of Prisons, Keith

Dewey, and numerous other parties.[1]  *See Bivens v. Six Unknown Named Agents of Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971).

The District Court construed Razzoli's complaint as alleging a claim for First

Amendment retaliation.  Razzoli filed a motion, and brief in support, for summary

judgment on March 21, 2005, along with a sworn "Supporting Affidavit" attesting to the

truth of the events as detailed in the supporting brief.  On May 9, 2005, the Defendants

filed a motion to dismiss or, in the alternative, for summary judgment.  An exchange of

filings on the part of both parties ensued.  One such filing pertinent to this appeal is that

on January 6, 2006, Razzoli filed a "Notice of Retaliatory Transfer [and] '*Renewal*' of

Request for Appointment of Counsel."  In this Notice, Razzoli alleged "'further acts' of

retaliation" and "renewed" his request for counsel.  The District Court treated this motion

as one for counsel and denied it on March 26, 2006.  In the same order, treating the

Defendants' motion as one for summary judgment, the District Court issued a

memorandum and order granting the Defendants' motion.  Razzoli timely appealed to this

Court.[2]

There are four issues presented in this appeal, the first three at this Court's request.

---

[1] Razzoli actually filed his complaint alleging a violation of 42 U.S.C. § 1983;
however the District Court construed the complaint as alleging a *Bivens* action.

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346.  This
Court's appellate jurisdiction arises under 28 U.S.C. § 1291.

3

The issues are: 1) did the appellant have adequate notice of the District Court's intent to convert Defendants' motion to dismiss, or alternatively, for summary judgment into a motion for summary judgment, pursuant to *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989); 2) should the District Court have construed plaintiff's notice of retaliatory transfer as a motion to amend the complaint; 3) what effect, if any, does *Heck v. Humphrey*, 512 U.S. 477 (1994), have on this matter; and 4) did the District Court abuse its discretion in denying Razzoli's requests for appointment of counsel?

In *Rose v. Bartle*, we held that all parties must be given the opportunity to present material to the court when the court converts a motion to dismiss into a motion for summary judgment. 871 F.2d at 340. We further held that "[t]he parties can exercise this opportunity only if they have notice of the conversion." *Id.* We find that Razzoli had adequate notice that the Court would convert Defendants' motion into one for summary judgment, as well as an adequate opportunity to present material to the Court. In *Hilfirty v. Shipman*, we determined that the plaintiff had adequate notice where "two of the five motions to dismiss were framed in the alternative as motions for summary judgment." 91 F.3d 573, 578–79 (3d Cir. 1996). In *Hilfirty*, we also considered that the plaintiff had an opportunity to respond for over a period of nearly eight months and submitted her own affidavit with her own brief. *Id.* at 579. While we recognize that the plaintiff in *Hilfirty* was represented by counsel and that Razzoli proceeded pro se, we believe that under the circumstances of this case, *Hilfirty* is determinative. Razzoli otherwise had notice of the

requirements and consequences of summary judgment, and the Defendants' motion in the alternative for summary judgment provided Razzoli with adequate notice of the conversion under *Hilfirty*.

First, the Defendants's brief in support of their motion specifically states that "Defendants are entitled either to dismissal or to an entry of summary judgment under Fed. R. Civ. P. 56." The Defendants then cited to Supreme Court case law explaining the specific requirements of the party opposing the motion.[3] Second, the Middle District of Pennsylvania provides all pro se inmates with notice of the consequences of Rule 56 summary judgment, as well as their responsibilities pursuant to Local Rules 7.1– 7.10, 26.4, 56.1 and Federal Rule of Civil Procedure 56. This notice is provided consistent with a Standing Order of the Middle District, and the record reflects that Razzoli was provided with a copy of this document at least three times prior to the instant Complaint.

---

[3] This language included:

> In *Celotex* [*Corp. v. Catrett*, 477 U.S. 317, 324 (1986)], the Court held that "Rule 56(e) . . . requires [] the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Additionally, an opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex*, 477 U.S. at 325.

Brief in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment at 10, Razzoli v. Director, Bureau of Prisons, et al., No. 04-2492 (M.D. Pa. June 10, 2005).

Third, Razzoli's filings with the District Court evidence an understanding of the Federal Rule. Indeed, Razzoli filed his own motion for summary judgment, which included a one paragraph notarized sworn affidavit entitled "Supporting Affidavit." In another filing before the Court, Razzoli argued that the Defendants did not timely file a brief in support of their motion for summary judgment, thereby evidencing familiarity with the local rules. Given these factors, we are satisfied that Razzoli had adequate notice under *Rose v. Bartle*.

With respect to the second issue before us, the District Court did not abuse its discretion when it failed to construe Razzoli's "Notice of Retaliatory Transfer" as a motion to supplement the complaint.[4] While it is beyond dispute that a district court has an obligation to construe pro se plaintiffs' pleadings liberally, *see, e.g.*, *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999), and a reasonable construction of Razzoli's submission asserted an additional claim of retaliation, it was not an abuse of discretion for the District Court to not so construe it. Indeed, a District Court is not under an obligation to review every prisoner filing to determine if it raises new cognizable claims or adds additional facts to a complaint. This is particularly true where, as here, Razzoli had previously filed a motion to amend his complaint and a motion to supplement his complaint, making the District Court aware that if he intended to supplement his

---

[4] We review an order denying a motion to supplement a complaint for abuse of discretion. *See Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002).

complaint an additional time, he had the knowledge and ability to do so. As such, we conclude that the District Court did not abuse its discretion.

Third, we consider what effect, if any, *Heck v. Humphrey*, 512 U.S. 477 (1994), has on this matter.[5] We conclude that Razzoli's claim that his disciplinary infraction was pretext for retaliation is barred as a matter of law, because his claim is in effect a collateral attack on the duration of his confinement.[6]

In *Heck*, the Supreme Court imposed a favorable termination requirement upon prisoner plaintiffs seeking relief under 42 U.S.C. § 1983. The Court concluded that a litigant could not proceed with his § 1983 damages action when the constitutional questions in that suit, if resolved favorably to the claimant, would necessarily undermine the validity of his prior conviction. After *Heck*, the Court addressed the question of whether "a claim for damages and declaratory relief brought by a state prisoner

---

[5] The *Heck* doctrine applies equally to *Bivens* actions and § 1983 actions. *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008) ("Although *Heck* involved a § 1983 action by a state prisoner, the reasoning in *Heck* has been applied to bar *Bivens* claims."). *See also Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (citing cases).

[6] As the District Court noted, Razzoli does not appear to seek the restoration of the loss of good time credit. Any such challenge to due process in the course of the disciplinary hearing and resulting loss of good time credit will not lie under § 1983. The Supreme Court has held that a § 1983 action will not lie when a state prisoner challenges "the fact or duration of his confinement," and seeks either "immediate release from prison," or the "shortening" of his term of confinement. *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal citations omitted). "Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks "the very duration of . . . physical confinement," and thus lies at "the core of habeas corpus." *Id.* (citations omitted).

7

challenging the validity of the procedures used to deprive him of good-time credits is cognizable under § 1983." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997). In that case, a prisoner was charged with, and found guilty of, four prison infractions. *Id.* He was sentenced to, *inter alia*, deprivation of 30 days good-time credit he had previously earned toward his release. *Id.* The prisoner claimed that his hearing officer concealed exculpatory witness statements and refused to ask specified questions of requested witnesses. *Id.* at 644. The Court found that this "principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646. As a result, it concluded that the prisoner's claim for declaratory relief and money damages was not cognizable under § 1983, because if the allegations of deceit and bias on the part of the decisionmaker were true, they would necessarily imply the invalidity of the punishment imposed. *Id.* at 648. Likewise, if Razzoli successfully demonstrated that his sanctions were the result of retaliation for engaging in constitutionally protected activity,[7] his success would "necessarily imply the invalidity of the punishment imposed." *See Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

Razzoli quite correctly points out that § 1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974)). In

---

[7] We assume, without deciding, that Razzoli's threat to sue Dewey constitutes constitutionally "protected activity."

*Wilkinson*, prisoners challenged the state procedures used to deny parole eligibility. *Id.* The Supreme Court concluded that the core of habeas relief was not implicated because the connection between the constitutionality of the prisoners' parole proceedings and release from confinement was too tenuous. *Id.* at 82. A favorable judgment for the prisoners did not necessarily imply that the denial of their parole was invalid. *Id.* ("[A] favorable judgment will not 'necessarily imply the invalidity of [their] conviction[s] or sentence[s].'"). Success for the prisoner plaintiffs meant nothing more than a new parole hearing at which the parole authorities could continue to decline to shorten their prison terms. *Id.* ("Success . . . means at most a new parole hearing."). While it is true that Razzoli was required to submit an acceptable release plan prior to being paroled, this argument is a red herring. The fact that Razzoli's own conduct (or lack thereof) was a constraint on his release does not negate the reality that if he prevailed on his claim of unlawful retaliation, that victory would necessarily imply the unlawfulness of the sanctions imposed. The direct and natural consequence of rescinding the sanctions would be a restoration of good time credits that by their very nature dictate a speedier release. As such, we conclude that the *Heck* bar applies to Razzoli's claim.

Finally, the District Court did not abuse its discretion when it denied Razzoli's requests for counsel. While we agree that the District Court could have been more thorough in reviewing the factors articulated in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), the Court did not abuse its discretion in light of Razzoli's demonstrated ability to

9

present his own case and the fact that the Defendants were entitled to judgment as a matter of law. Albeit on different grounds, we have concluded the same.

Accordingly, we will affirm the District Court's grant of summary judgment in favor of the Defendants.